IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

BRANDON CAIRE,

      Plaintiff,

v.

CONIFER VALUE BASED CARE, LLC, *et al.*,

      Defendants

Case No.:  RDB-13-1216

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CONIFER VALUE-BASED CARE, LLC'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS COUNTS THREE AND FOUR FOR FAILURE TO STATE A CLAIM**

Defendant Conifer Value-Based Care LLC (hereinafter "CVBC"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of its Motion to Compel Arbitration, or in the Alternative, to Dismiss Counts Three and Four against CVBC for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Plaintiff has alleged several causes of action pertaining to his prior employment with Defendant Conifer Value-Based Care, LLC, f/k/a InforMed, LLC ("InforMed").  Plaintiff alleges violations of the Family and Medical Leave Act ("FMLA") (Count Two), the Americans with Disabilities Act ("ADA"), and the Americans with Disabilities Amendments Act ("ADA") (Count Three), the Maryland Human Relations Act (Count Four) and the Maryland Wage Payment and Collection Law (Count Five).

Plaintiff's Complaint against CVBC must be dismissed, and this Court must compel the parties to submit said claim to arbitration, pursuant to an arbitration agreement entered into by and between Plaintiff and InforMed (now CVBC), at the time he commenced employment in

October 2010 (the "Arbitration Agreement").   The Arbitration Agreement is valid and enforceable, and the parties have agreed to resolve this dispute, which arises out of and is associated with Plaintiff's employment with InforMed, in accordance with its terms.

Alternatively, if, and only if, the Court determines that Plaintiff's claims against CVBC should remain in this Court, then the Court should dismiss Counts Three and Four against CVBC for failure to state a claim upon which relief can be granted.[1]

## FACTS

Defendant CVBC is the successor entity of Plaintiff's former employer, InforMed, LLC. Complaint at ¶5.  On or about October 4, 2010, InforMed hired Plaintiff as a Customer Service Representative.  Complaint at ¶12.  At the time of his hire, Plaintiff was required to complete several documents in connection with commencing his employment, including those verifying his right-to-work, personal information and the like.  Complaint at ¶75.  Plaintiff was also provided a copy of InforMed's Employee Handbook; Complaint at ¶75.  Contained within the Employee Handbook was InforMed's arbitration policy; Complaint at ¶75.  *See also* Exhibit 1, Arbitration Policy of InforMed Employee Handbook.

At the same time, Plaintiff was also provided with and signed a Receipt and Acknowledgement of the InforMed Employee Handbook.   *See* Exhibit 2, Receipt and Acknowledgment of InforMed Employee Handbook.  The receipt, acknowledged and signed by Plaintiff on October 4, 2010, acknowledged not only that Plaintiff generally understood and received the InforMed Employee Handbook, but also makes specific and separate acknowledgment that he had read and understood the Arbitration Policy contained in the InforMed Employee Handbook.  *See* Exhibit 2.

---

[1] In the event the Court denies CVBC's Motion to Compel Arbitration, CVBC would file an Answer as to Counts Two and Five.

Plaintiff also received a separate Acknowledgement of an Agreement with InforMed Arbitration Policy.   *See* Exhibit 3, Acknowledgement of an Agreement with InforMed Arbitration Policy.  The Acknowledgement of an Agreement with InforMed Arbitration Policy again sets forth the arbitration policy, and Plaintiff acknowledged his agreement to comply with the terms thereof.

Therefore, at the commencement of Plaintiff's employment, Plaintiff was provided with three (3) distinct and separate documents (two of which he signed) setting forth and advising him of InforMed's Arbitration Policy:  (1) the Employee Handbook which contains the Arbitration Policy; (2) the Receipt and Acknowledgement of InforMed Employee Handbook, which specifically references the Arbitration Policy; and (3) a separate Acknowledgement of and Agreement with InforMed Arbitration Policy, yet again restating the policy.

Plaintiff alleges that he suffers from mental health issues, including Major Depressive Disorder, for which he was "forced to take time away from work to address."  Complaint at ¶¶17-18.  In early January 2012, Plaintiff approached Janet Camp, InforMed's Human Resources Director, and informed her of this alleged medical condition and his need to take intermittent "time off" for treatment.  Complaint at ¶55.  On or about January 9, 2012, Plaintiff's healthcare provider completed an FMLA Leave Certificate for submission to Ms. Camp at InforMed. Complaint at ¶56.  This certification signaled "a possible marked departure in Mr. Caire's ability to work."  Complaint at ¶57.  It further noted that Plaintiff "may need an extended period of time off work due to illness," and that "the patient may need 14 days or more per month if he has an exacerbation of his illness."  Complaint at ¶57.  On January 13, 2012, Plaintiff received a Notice of Eligibility and Rights and Responsibilities ("FMLA Notice") pertaining to his FMLA request. The FMLA Notice confirmed that Plaintiff was eligible for FMLA leave.  Complaint at ¶58.  The

following day, Plaintiff received notice by way of e-mail from Ms. Camp that his FMLA

Request for Leave had been approved.  Complaint at ¶58.  Plaintiff began his leave on or about

Monday, January 30, 2012.  Complaint at ¶59.

On February 1, 2012, InforMed terminated Plaintiff.[2]  Complaint at ¶62.  The letter

terminating Plaintiff's employment was signed by InforMed Human Resources Director Janet

Camp and set forth the reasons for his termination.  Complaint at ¶63.

## ARGUMENT

**I.     THE ARBITRATION AGREEMENT BETWEEN PLAINTIFF AND INFORMED, LLC MANDATES THAT PLAINTIFF'S CLAIMS AGAINST CVBC BE RESOLVED THROUGH ARBITRATION, NOT IN COURT.**

> **A.     The Arbitration Agreement between Plaintiff and InforMed, LLC is valid and enforceable.**

Plaintiff asserts his claims against CVBC as the surviving entity/successor to InforMed,

LLC.  Complaint at ¶5.  At the time his employment commenced with InforMed, Plaintiff agreed

to and acknowledged InforMed's Arbitration Policy, and agreed to resolve claims pertaining to

his employment by way of arbitration, not within the courts.   The scope of the Arbitration

Agreement encompasses Plaintiff's claims.  InforMed's Arbitration Policy states in relevant part

as follows:

> "If an employment dispute arises while you are employed at InforMed, the
> company requests that you agree to submit any such dispute arising out of your
> employment or the termination of your employment (including, but not limited to,
> claims of unlawful termination based on race, sex, age, national origin, disability,
> breach of contract, or any other bias prohibited by law) exclusively to binding
> arbitration under the Federal Arbitration Act, 9 U.S.C., §1.  Similarly, disputes
> arising during your employment involving claims of unlawful discrimination or
> harassment under Federal or State statutes shall be submitted exclusively to
> binding arbitration under these provisions.  This arbitration shall be the exclusive
> means of resolving any dispute arising out of your employment or termination

---

[2]   Plaintiff had been the subject of an internal investigation.  His termination was the result of his failure to follow company protocol, insubordination, and misuse of funds.  These issues are obviously in dispute, but are not material to the present Motion.

from employment by InforMed or you, and no other action can be brought by an employee in any court or any other forum.

By simply accepting or continuing employment with InforMed, you automatically agree that arbitration is the exclusive remedy for all disputes arising out of or related to your employment with InforMed and you agree to waive all rights to civil court action regarding your employment and the termination of your employment with InforMed; only the arbitrator and not a judge nor a jury, will decide the dispute....

You and InforMed shall each bear respective costs of your legal representation at any arbitration.  The parties, if any, shall share the cost of the arbitrator and court reporter equally."

*See* Exhibit 1.

In the Receipt and Acknowledgement of the InforMed Employee Handbook, acknowledged and executed by Plaintiff, there is a specific section referencing arbitration which states as follows:

"I acknowledge I have read and understand the Arbitration Policy contained in the Employee Handbook and agree to abide by the policy."

*See* Exhibit 2.  The Acknowledgement of an Agreement with InforMed Arbitration Policy, also signed by Plaintiff on October 4, 2010, further confirms Plaintiff's agreement with the Policy where it states as follows:

"My signature on this document acknowledges I understand the above Arbitration Policy and agree to abide by its conditions ... I agree I will be entitled to legal representation, at my own cost, during arbitration.  I further understand I will be responsible for half of the costs of the arbitrator and the incidental costs of arbitration."

*See* Exhibit 3.

The Arbitration Agreement encompasses Plaintiff's claims.  Plaintiff's claims all are premised upon his termination from employment with InforMed.  The Arbitration Policy indicates that the scope of the Arbitration Agreement extends to termination claims ("any such dispute arising out of your employment or the termination of your employment" (Exhibit 1); and

"in accordance with InforMed's Arbitration Policy, I will submit any dispute – including but not limited to my termination – arising under or involving my employment with InforMed to binding arbitration...." (Exhibit 3)). Consequently, Plaintiff's claims all are within the scope of the Arbitration Agreement and the parties must be compelled to arbitrate said claim.

Motions to compel arbitration in which the parties dispute the validity of an arbitration agreement are treated on the same standard as a motion for summary judgment. *Rose v. New Day Financial, LLC,* 816 F. Supp. 2d 245, 251 (D.Md. 2011) (citing *Shaffer v. ACS Gov't Services, Inc.,* 321 F. Supp. 2d 682, 683-84 (D.Md. 2004)).[3]

The Arbitration Agreement invokes the Federal Arbitration Act ("FAA") 9 U.S.C. §1, *et. seq.* Exhibit 1. Pursuant to the act, a written provision in a contract to settle by arbitration a controversy thereafter rising out of such contract "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991) (citing 9 U.S.C. § 2)). The FAA also provides for stays of proceedings in federal district court when an issue in the proceeding is referable to arbitration and for orders compelling arbitration when one has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. §§ 3-4. The Act manifests a "liberal federal policy favoring arbitration agreements." *Gilmer*, at 25 (citing *Moses H. Cohn Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983)).

Statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. *Gilmer*, at 26. Employment discrimination claims are subject to arbitration if the employer and employee agreed to arbitrate disputes of that nature. *Austin v. Owens-Brockway*

---

[3]   Because the current Motion is postured as Motion to Compel Arbitration, or in the Alternative, to Dismiss Counts Three and Four under Rule 12(b)(6) for failure to state a claim, matters beyond the pleadings are being presented to the Court solely for the Motion to Compel Arbitration portion of the Motion. The arguments pertaining to dismissal of Counts Three and Four for failure to state a claim upon which relief can be granted, *infra*, are based solely upon the allegations of the Complaint, and no extraneous materials are relied upon for that purpose.

*Glass Container, Inc.,* 78 F. 3d 875, 884 (4th Cir. 1996) (citing *Benefits Communications Corp. v. Klieforth*, 642 A.2d 1299, 1303 (D.C. 1994)).

Arbitration agreements governed by the FAA are valid, irrevocable, and enforceable save upon such grounds as exist at law or equity for the revocation of any contract. *Rose v. New Day Financial, LLC*, 816 F. Supp. 2d 245, 252 (D.Md. 2011). The validity of an arbitration agreement is determined under state contract formation law. *Id.*, citing *AT&T Mobility, Inc. v. Concepcion,* 131 S. Ct. 1740, 1745-46, 179 L.Ed. 2d 742 (2011); *Hill v. Peoplesoft USA, Inc.,* 412 F. 3d 540 (4th Cir. 2005)).

The Arbitration Agreement is valid and enforceable. Plaintiff was provided with information pertaining to the Arbitration Policy in no fewer than three (3) separate places at the time his employment commenced. He signed two (2) separate and distinct acknowledgements and agreements pertaining to the Arbitration Policy. In so doing, a valid enforceable Agreement was created. He accepted and continued his employment, and the benefits thereof, with full knowledge and consent to this Arbitration Agreement.

Plaintiff generally asserts that the Arbitration Agreement between Plaintiff and InforMed is unconscionable, and thus, unenforceable. While the Complaint lacks the facts necessary to support such a conclusory allegation, he generally asserts that he did not have an opportunity to review the employee manual; that the Arbitration Agreement constituted a contract of adhesion; that the agreement lacks mutuality; and that the agreement is unconscionable based upon the requirement that the parties share the cost of any arbitration evenly. Complaint at ¶88. None of these general conclusory allegations are sufficient to disturb the enforceability of the Arbitration Agreement.

For a contract, including a contract of adhesion, to be unconscionable under Maryland law, it is necessary that the contract be both procedurally unconscionable, evidencing one party's lack of meaningful choice in making the contract, and substantively unconscionable, containing terms that unreasonably favor the more powerful party. *Rose v. New Day Financial, LLC*, 816 F. Supp. 2d 245, 254 (D.Md. 2011) (citing *Walther v. Sovereign Bank*, 386 Md. 412, 426 (2005)). A showing of both procedural unconscionability and substantive unconscionability is necessary to void the contract. *Id.* at 256 (citing *Walther,* 386 Md. at 426)).

Plaintiff's allegations that he does not recall signing a separate acknowledgement regarding the Arbitration Agreement, and that he did not have the opportunity to review the Handbook do not disturb the enforceability of the Arbitration Agreement.[4]

Inasmuch as the contract principles upon which the Arbitration Agreement is governed by state contract law, Maryland decisions on this are authoritative.  To that end, the Court of Appeals addressed these exact issues in *Walther v. Sovereign Bank*, 386 Md. 412 (2005).  In that case, the petitioners, who sought to have an arbitration agreement set aside, asserted that they "were provided no opportunity to review the disclosure agreement beyond a cursory perusal and thus, never noticed or read the arbitration clause." *Id*. at 428.  The Maryland Court of Appeals, however, quickly dispatched with such an argument, noting that "petitioner's claim that they were oblivious as to the arbitration clause is specious at best." *Id.*  The Court noted that under Maryland law, the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms. *Id.* at 429 (citing *Merritt Music Service, Inc. v. Sonneborn*, 245 Md. 213, 221-22 (1967)).  Thus, the petitioner's assertion that they did

---

[4]   It is noteworthy that the Plaintiff does not dispute the signature of any of the materials, but indicates that he has no recollection of such.  Moreover the Plaintiff asserts that he was not afforded the time to review the Handbook. He does not, however, indicate that he was not afforded the time to review either of the Acknowledgements, both of which he signed, specifically pertaining to the Arbitration Policy.  He also continued to work for one-and-a-half years with the Arbitration Policy in effect.

not, in their estimation, have sufficient opportunity to read the agreement did not serve to undermine the validity or enforceability of the agreement.

This Court, in the case of *Rose v. New Day Financial, LLC*, 816 Supp. 2d 245 (D.Md. 2011), addressed the issue of not reading the agreement in the context of procedural unconscionability.  In *Rose*, the plaintiffs argued that the arbitration agreement was procedurally unconscionable because they were given little time to review the terms, were not permitted to consult with others about the meaning of the agreement, and were told they would lose their jobs if they did not sign it.  *Id* at 256.  However, the Court, relying upon *Walther v. Sovereign Bank*, 386 Md. at 428, noted that a party's failure to thoroughly review an agreement before signing it does not make the agreement procedurally unconscionable.  *Id*.  The Court further went on to state that even if a party could not take the time to understand an agreement, he will be bound by the agreement.  *Id*. (citing *Dieng v. College Park Hyundai,* 2009 U.S. Dist. LEXIS 58785 (D. Md. 2009)).  As this Court quoted: "In its simplest terms, Plaintiffs argue that they should not be held to an agreement that they signed, but did not have or take the time to read and understand. Plaintiff's argument has no merit."  *Id*. (citing *Dieng*, 2009 U.S. Dist. LEXIS 58785 (D.Md. 2009)).  An arbitration agreement is not procedurally unconscionable merely because it was not mentioned or provided to employees before they began work.  This is so even if signing it was a condition of employment and the employees needed time they were not given to consult with counsel to understand the document.  *Id*.

Plaintiff's contention that the Arbitration Agreement constitutes a contract of adhesion is insufficient to render it unconscionable, or unenforceable.  A contract of adhesion has been defined as one that is drafted unilaterally by the dominant party and then presented on a take it or leave it basis to the weaker party, who has no real opportunity to bargain about its terms.

*Walther,* 386 Md. at 430 (citing Restatement (Second) of Conflict of Laws, §187 cmt. d. (1971)). A contract of adhesion, however, is not automatically deemed *per se* unconscionable. *Id* at 430. Merely because a contract is deemed one of adhesion does not mean that the Court will simply excise or ignore terms because, in any given case, they may operate to the perceived detriment of the weaker party. *Id* (citing *Meyer v. State Farm Fire & Casualty Co.,* 85 Md. App. 83, 89-90 (1990)).

The factual allegations of the Complaint do not support the notion that the Arbitration Agreement was a contract of adhesion. Plaintiff's contention that he did not have sufficient time to review it does not automatically transform the Arbitration Agreement into a contract of adhesion. Moreover, there is no indication of any attempts to negotiate the terms of the Agreement that were rebuffed in any way. Thus, the mere allegation that Plaintiff did not have time to review the document is insufficient to establish that the Arbitration Agreement is a contract of adhesion and thus, procedurally unconscionable.

Nevertheless, even if the Court were to find the Arbitration Agreement to be a contract of adhesion, and thus procedurally unconscionable, that does not render the contract unenforceable. Rather, it must also be established that the contract is substantively unconscionable, which involves those one-sided terms of the contract from which a party seeks relief (for instance, "I have the right to cut off one of your child's fingers for each day you are in default"). *Walther,* 386 Md at 427 (citing *Carlson v. General Motors Corp.*, 883 F. 2d 287 (4th Cir. 1989)). Substantive unconscionability has been described as contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. *Id*., at 421 (citing *Harris v. Greentree Financial Corp.,* 183 F. 3d 173 (3rd Cir. 1999)). Substantive unconscionability "reminds us of contracts where clauses are contrary to public policy or

illegal."  *Id* at 427 (quoting *Carlson v. General Motors Corp.,* 883 2d 287, (4th Cir. 1989)). Plaintiff's allegations do not rise to this level.

Plaintiff asserts that the Arbitration Agreement lacks mutuality, although it does not identify the facts upon which this contention is based.   The Maryland Court of Appeals addressed argument pertaining to lack of mutuality as a substantive unconscionability issue in the *Walther* case.   None of the terms of the Arbitration Agreement raise an issue with regard to a lack of mutuality.   The Arbitration Agreement is fully applicable to both the employee and the company.   The Arbitration Policy, in describing its effect, states as follows:   "[t]his arbitration shall be the exclusive means of resolving any dispute arising out of your employment or termination from employment by InforMed or you, and no other action can be brought by employees in any court or any forum."   Exhibit 1.   Furthermore, the Arbitration Policy describes the proceedings as "binding arbitration under the Federal Arbitration Act."   Exhibit 1.   The Arbitration Agreement, therefore, clearly demonstrates that both InforMed and Plaintiff agreed to be bound by the arbitration process described therein with regard to adjudicating any claim within its scope.

Such an arrangement constitutes adequate consideration, as each party has indicated a mutual promise to arbitrate and be bound by such arbitration.   *Johnson v. Circuit City Stores, Inc.,* 148 F. 3d 373, 378 (4th Cir. 1998) (citing *O'Neil v. Hilton Head Hospital*, 115 F. 3d 272, 275 (4th Cir. 1997)).   Thus, although an employer may not be required to arbitrate all of its claims, the implied agreement to be bound by the arbitration process constitutes sufficient consideration.   Mutuality does not require an exactly even exchange of identical rights and obligations between the two contracting parties before a contract would be deemed valid. *Walther,,* 386 Md. at 433 (citing *Harford County v. Town of Bel Air*, 348 Md. 363, 383 (1998)).

Arbitration agreements that more frequently bind the employee than the employer are valid despite the differences in the parties' rights. *Rose,* 816 F. Supp. 2d at 259 (citing *Adkins v. Labor Ready, Inc.,* 303 F. 3d 496, 501-03 (4th Cir. 2001)). Thus, there is no basis for the unsupported allegation that the Arbitration Agreement lacks mutuality. Both parties agreed to be bound by the arbitration procedure identified in the Agreement, and there is sufficient and inadequate consideration for such.

Plaintiff also asserts that a requirement that the parties pay an equal share of the arbitration cost is unconscionable. Complaint, ¶88(g). Such a position, however, has been rejected by the courts. The Fourth Circuit expressly rejected an argument that a fee-splitting arrangement requiring the employee to share the arbitration costs and pay half the arbitrator's fee is *per se* unenforceable. *Bradford v. Rockwell Semiconductor Systems, Inc.,* 238 F. 3d 549, 556 (4th Cir. 2001). Rather, a fee splitting provision can render an arbitration agreement unenforceable only if, under the terms of the provision, an aggrieved party must pay arbitration fees and costs "that are so prohibitive as to effectively deny the employee access to the arbitral forum." *Muriithi v. Shuttle Express, Inc.,* 712 F. 3d 173, 181 (4th Cir. 2013) (citing *Bradford,* 238 F. 3d at 554). Such an analysis, however, must be made on a case-by-case basis. Under Maryland law, a contractual provision that requires the parties to split arbitration fees must be reviewed to determine whether the agreement to divide the costs would make arbitration prohibitively expensive. *Falls v. 1 CI, Inc.*, 208 Md. App. 643, 673 (2012). The party opposing arbitration has the burden of proving that fee splitting would make the arbitration prohibitively expensive, as compared to litigating in court. *Id.* Plaintiff has demonstrated no indication of any disparity between the costs of arbitration for Plaintiff versus the cost of litigating the matter in this Court. Furthermore, there is no inherent notion that an equal fee splitting provision is

uniquely burdensome in this regard, as provisions calling for fee splitting whereby each party bears its own cost, constitute nothing unusual and are commonplace. *Nowak v. NAHB Research Center, Inc.,* 157 Md. App. 24, 39 (2004). Consequently, the Arbitration Agreement is valid and enforceable and thus, Plaintiff's FMLA claim against Defendant CVBC must be submitted to arbitration.

In addition to the validity of the Arbitration Agreement, contrary to Plaintiff's assertion, there has been no waiver of the Agreement.

On or about January 31, 2013, Plaintiff filed a Demand for Arbitration with the American Arbitration Association ("AAA"). InforMed was subsequently made aware of Plaintiff's demand. On February 14, 2013, InforMed forwarded a letter to AAA advising AAA that InforMed did not agree to submit the dispute identified by Plaintiff to arbitration with AAA. *See* Exhibit 4, Letter to AAA. The correspondence to AAA made it clear that the reason for InforMed's refusal to proceed with AAA was due to Plaintiff's unilateral decision to submit the matter to AAA without consultation of InforMed, and because the fee structure in place with AAA is contrary to the Arbitration Agreement between the parties. Specifically, the communication to AAA stated as follows:

> "Submission of this matter to AAA by Mr. Caire was done without the consent of, or even consultation with, InforMed. InforMed, however, did not agree, and does not agree with AAA serving as the arbitrator in this matter. Among other reasons, AAA's framework for fees is inconsistent with the Agreement between the parties, as the parties agreed that InforMed and Mr. Caire would share equally in any and all fees related to the arbitration. However, AAA seeks to impose a substantially unequal fee allocation between the employer and employee. This is contrary to the terms of the Agreement. Therefore, neither InforMed nor CVBC will be submitting any filing fee to AAA in connection with this matter, and expressly do not consent to AAA serving as the arbitrator or administrator in the arbitration of any dispute between InforMed and Brandon Caire."

On the same day, February 14, 2013, InforMed also provided correspondence to Plaintiff's counsel indicating InforMed's willingness to proceed to arbitration, albeit not with AAA, given AAA's fee structure that is contrary to the agreement of the parties. InforMed advised Plaintiff's counsel that Plaintiff's submission of the matter to AAA was inconsistent with the Agreement, in that the fee splitting schedule at AAA violated the Arbitration Agreement. InforMed, however, advised Plaintiff of its willingness to proceed with arbitration, in accordance with the Agreement. Specifically, the communication stated as follows:

> "Submission of this dispute to AAA for arbitration was premature, as the parties have not agreed or consented to any particular arbitrator. As you know, the Arbitration Agreement does not set forth a required or pre-determined arbitrator or administrator. Therefore, nothing in the Arbitration Agreement gives either party the unilateral right or ability to determine the identity of the arbitrator or the rules and procedures under which the arbitration will occur.
>
> With that said, we have accepted your January 31, 2013 Demand for Arbitration with AAA as the written Request for Arbitration required under the Arbitration Agreement between the parties. However, at this point, it is appropriate for the parties to engage in dialogue to coordinate and agree upon the details of the arbitration going forward. With regard to the identity of the arbitrator, we would propose a retired judge, and would be willing to provide a list of acceptable candidates, as well as review any potential candidates you may propose."

*See* Exhibit 5, February 14, 2013 communication to Plaintiff's counsel.

The communications by InforMed to both AAA and Plaintiff's counsel clearly indicate that there was no intention to waive the right to arbitrate. Rather, Plaintiff sought to unilaterally hijack the arbitration process by submitting it to AAA without consultation with InforMed. Not only did Plaintiff seek to submit the matter to arbitration without consultation of the other parties, but sought to do so in a manner that is inconsistent with the Arbitration Agreement, namely with regard to the fee structure. In response to this unilateral action, which was inconsistent with the terms of the Arbitration Agreement, InforMed and advised Plaintiff's counsel that it would not agree to proceed with Plaintiff's subjective and unilateral choice of

arbitration forum.   Rather, InforMed advised Plaintiff's counsel that it believed it was appropriate for the parties to engage in dialogue to coordinate and agree upon the details of the arbitration going forward, given that the Arbitration Agreement does not identify a pre-selected arbitrator.  InforMed further went so far as to provide suggestions with regard to the identity of the arbitrator (a retired judge) and welcomed input from Plaintiff's counsel in that process going forward.  Neither Plaintiff nor Plaintiff's counsel ever responded to InforMed's invitation, but rather, chose to file suit in this Court.   Notwithstanding that election, the actions of InforMed clearly do not constitute a waiver of the Arbitration Agreement.   All actions taken by InforMed were consistent with an intent to arbitrate the claims at issue.   Plaintiff has attempted to characterize InforMed's unwillingness to allow Plaintiff to dictate all terms of the arbitration process, and to breach the terms of the Arbitration Agreement with regard to fee costs, as a waiver.  However, the facts clearly demonstrate this in inaccurate.

Consequently, the Arbitration Agreement is valid and enforceable, and as there has been no waiver of it, this Court must compel the parties to proceed to arbitration of the FMLA claim.

## II.     ALTERNATIVELY, PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE A CLAIM AGAINST CVBC FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (COUNT THREE).

In the event that the Court determines that Plaintiff's claims are not subject to arbitration, and must perform a substantive review of the claims, then Defendant CVBC moves that the ADA claim (Count Three) be dismissed for failure to state a claim upon which relief can be granted.

**Legal Standard**

The adequacy and sufficiency by which the necessary elements of claims must be pled are governed by the Federal Rules, including Rule 8.  Moreover, Rule 12(b)(6) of the Fed. R. Civ. P. requires a dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not resolve contests surrounding the facts, the merits, or the application of defenses.  *Presley v. City of Charlottesville*, 464 F. 3d 480, 483 (4th Cir. 2006).  While, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the well-pled allegations of the complaint as true and view the facts and reasonable inferences derived therefrom in a light most favorable to the Plaintiff, the court need not accept legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions or arguments.  *Nemet v. Chevrolet Ltd. v. Consumer Affairs.com, Inc.*, 591 F. 3d 250, 253 (4th Cir. 2009).

The Supreme Court has stated that a complaint must be dismissed if it does not allege sufficient facts to state a claim to relief that is "plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Under this "plausibility standard" the complaint is required to include "more than labels and conclusions" or a "formulaic recitation of the elements of the cause of action."  *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, the complaint must be supported by factual allegations that "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements do not suffice.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In order to survive the motion, a plaintiff must show more than the sheer possibility of success, but rather, must show that the claim has facial plausibility by pleading factual content that allows a court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556

U.S. at 678.  In performing this function, the court must "draw on its judicial experience and common sense" to determine whether the plausibility standard has been satisfied.  *Id.*, at 664. The court, in doing so, must determine whether the plaintiff has been successful in nudging his claim across the line from conceivable to plausible.  *Bell Atlantic Corp,* 550 U.S. at 570.

**Argument**

**A.  Plaintiff is Not a Qualified Individual With a Disability**

In order to establish a violation of the ADA, Plaintiff must prove (1) that he has a "disability," (2) that he was "qualified" for his position; and, (3) that Defendant's termination of his employment constituted an unlawful "discrimination" based on his disability.  *Foremanye v. Bd. of Cmty. Coll. Trustees for Baltimore Cnty*., 956 F. Supp. 574, 578 (D. Md. 1996).  Relevant here, Plaintiff must therefore allege sufficient facts showing, among other things, that he is a "qualified individual with a disability."  *See* 42 U.S.C. § 12112(a) (providing that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual[]").  Inasmuch as Plaintiff cannot, as a matter of law, show that he is "qualified individual with a disability," his ADA claim fails on its face.

Within the meaning of the ADA, a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position" that he holds or desires.  *See* 42 U.S.C. § 12111(8); *Lewis v. Univ. of Maryland, Baltimore,* 2012 WL 5193820 at *4 (D. Md. 2012).  As a matter of law, an individual who cannot attend work regularly on account of a disability is not "qualified" for his position for ADA purposes.  *See, e.g.*, *Tyndall v. Nat'l Educ. Centers, Inc. of California,* 31 F.3d 209, 213 (4th Cir. 1994).  In *Tyndall,* although the Fourth Circuit acknowledged that the employee possessed the necessary skills for her position and performed

well at work, her disability caused her to miss more than 40 days of work in seven months, including crucial instructional days.  *Id*. at 213.  Upon consideration of her claim under the ADA, the Fourth Circuit determined that the employee's frequent absences rendered her unable to function in her job.  *Id*.  She therefore was not a "qualified individual with a disability" entitled to ADA protection.  *Id*.; *see also, Halperin v. Abacus Technology Corp*., 128 F.3d 191, 199 (4th Cir. 1997); *overruled on other grounds by Baird v. Rose,* 192 F.3d 462 (4th Cir. 1999) (holding that an employee who is not able to come to work regularly is not a "qualified individual" under the ADA); *Broussard v. Panetta*, 2013 WL 45902 at *8 (D. Md. 2013) (stating that an employee who failed to report for work for over seven months, and without confirming when she would return to duty, was not an "otherwise qualified" individual entitled to disability discrimination protection).

The facts in this case are similar to those at issue in *Tyndall*.  Specifically, Plaintiff admits in his own Complaint that, "not long after being hired by InforMed, [he] was forced to take time away from work to address his health issues."  *See* Pl. Compl. ¶ 18.  When his condition worsened, Plaintiff told his supervisor of his "need to take time away from work" and indicated that he would need between 1 and 1.5 weeks of FMLA leave, "followed by intermittent leave" to address his health issues.  *Id*. at ¶¶ 54-55.  Plaintiff further put Defendant on notice that his condition could require him to take an "extended period of time off work[,]" including "14 days or more per month."  *Id*. at ¶ 57.  By Plaintiff's own allegations, Plaintiff was unable to attend work on a regular and consistent basis.  Under applicable case law, this inability to work rendered him unable to perform the essential functions of his job.  *See Tyndall, supra.*  The facts alleged in the Complaint, therefore, fail to allege that Plaintiff was a "qualified individual with a

disability," as defined by the ADA.  Consequently, the Complaint fails to state a cause of action for an ADA claim against CVBC, and Count Three must be dismissed as to CVBC.

**B.      Plaintiff's Termination Was Not Motivated by his Alleged Disability.**

Plaintiff's ADA claim fails for another reason: Plaintiff has not alleged, as he must, any causal connection between his alleged disability and his termination.

In addition to alleging that he is a "qualified individual with a disability," Plaintiff must also put forth sufficient facts to show that that his disability was a "motivating factor" of the alleged adverse employment action.  *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 470 (4th Cir.1999); *Sharma v. Howard Cnty.,* 2013 WL 530948 at *6 (D. Md. 2013).  Put differently, Plaintiff must set forth sufficient facts establishing a causal connection between his employer's knowledge of his disability and the subsequent adverse employment action.  *Id.*

In the instant matter, Plaintiff alleges that he disclosed his disability to Defendant shortly after he was hired in October 2010.  *See* Pl. Compl. ¶ 12.  He was terminated over a year later, in February 2012.  *Id.* at ¶ 62.  As this Court has held, merely alleging that an employer was aware of an employee's disability before the employee suffered an adverse employment action does not sufficiently establish the requisite causal nexus under the ADA.  *See Sharma v. Howard Cnty.,* 2013 WL 530948 at *6 (D. Md. 2013).  Indeed, in *Sharma*, this Court held that the an employee could not allege a valid ADA claim by merely contending that his employer terminated him three years after becoming aware of his disability.  *Id.*  This mere sequence of events, the Court concluded, did not give rise to a reasonable inference of disability discrimination.  *Id.*  This was particularly true in light of the long period of time that elapsed between the employee's disclosure of his disability and his dismissal.  *Id.*

Similarly here, Plaintiff alleges that Defendant violated the ADA because it discharged him sixteen months after becoming aware of his condition.   Plaintiff's allegations in the Complaint, which concern only the timing of Plaintiff's disclosure of his disability and Defendant's decision to terminate him, fails to raise any inference that Defendant's decision was motivated by Plaintiff's disability.   As in *Sharma*, this Court must conclude that Plaintiff's attempt to show causation through *post hoc ergo propter hoc* reasoning must fail.   Without any facts to support an inference that he was terminated because of his disability, Plaintiff fails to state a valid claim under the ADA.   Count III must therefore be dismissed.

## III.   PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE A CLAIM AGAINST CVBC FOR VIOLATION OF THE MARYLAND HUMAN RELATIONS ACT (COUNT FOUR).

Plaintiff's claim under the Maryland Human Relations Act ("MHRA"), Md. Code (1984, 2009 Repl. Vol.) State Government Article §§ 20-601, *et seq*., fails for the same reasons.  *See* Pl. Compl. ¶¶ 109-114.   In relevant part, the MHRA, like the ADA, prohibits "discharge. . . [of] any individual. . . because of. . . disability" and "fail[ure] or refus[al] to make a reasonable accommodation for the known disability of an otherwise qualified employee."   MHRA § 20–606(a)(1)(i), (a)(4).   In light of the similarities between the statutes, Maryland Courts interpreting the MHRA do so under ADA standards.  *See See, e.g., Newman v. Pall Filtration & Separations Grp., Inc.,* 2013 WL 656788 at * 3-4 (D. Md. 2013) (interpreting both statutes under the same legal principles); *Lewis,* 2012 WL 5193820 at *4 (same); *Gaither v. Anne Arundel Cnty.,* 94 Md. App. 569, 577 (1993) (same).   As set forth above, since Plaintiff has plead no facts to show that he is "qualified individual with a disability" or that his termination was motivated by Defendant's knowledge of his alleged disability, Plaintiff cannot allege a proper claim under the MHRA.   Accordingly, Count Four must be dismissed.

IV.     **CONCLUSION**

For the reasons stated herein, as well as in Defendant CVBC's Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss, Defendant CVBC requests that this Court dismiss the action as to CVBC and compel the parties to submit Plaintiff's claims against CVBC to arbitration or alternatively, dismiss Counts Three and Four against CVBC for failure to state a claim upon which relief can be granted, and/or issue any and all other relief that the Court deems just and appropriate.

Respectfully submitted,


*/s/ John S. Vander Woude*
John S. Vander Woude (Fed. Bar # 04882)
Eccleston and Wolf, P. C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD  21076-1378
410-752-7474
410-752-0611 (fax)
vanderwoude@ewmd.com
*Attorneys for Defendants CVBC and Janet Camp*

*/s/ Eric M. Rigatuso*
Eric M. Rigatuso (Fed. Bar # 27605)
Eccleston and Wolf, P. C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD  21076-1378
410-752-7474
410-752-0611 (fax)
rigatuso@ewmd.com
*Attorneys for Defendants CVBC and Janet Camp*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 10th day of June, 2013, a copy of Memorandum of

Law in Support of Defendant CVBC's Motion to Compel Arbitration or, in the Alternative, to

Dismiss Counts Three and Four for Failure to State a Claim was sent via electronic service to:

Ruth Anne Azeredo, Esquire
Ruth Anne Azeredo, LLC
Suite 300
1997 Annapolis Exchange Parkway
Annapolis, MD   21401
*Attorney for Plaintiff*


***AND VIA FIRST CLASS MAIL TO***:

Conifer Health Solutions, LLC
c/o Corporation Trust, Inc., Resident Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801


By: *  /s/ John S. Vander Woude*
John S. Vander Woude