# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

| | |
|---|---|
| **BRANDON CAIRE**<br><br>      Plaintiff<br><br>v.<br><br>**CONIFER VALUE BASED CARE, LLC,**<br>**et al.**<br><br>      Defendants | **Case No. RDB-13-1216** |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTIONS TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, PARTIAL MOTIONS TO DISMISS

Defendants Conifer Value Based Care, LLC, formerly InforMed, LLC ("InforMed"), and Janet Camp, by and through undersigned counsel, hereby submit this Reply to Plaintiff's Opposition to the Motions to Compel Arbitration, or in the Alternative, Motions to Dismiss, filed by the Defendants.

## INTRODUCTION

Plaintiff's Opposition spends considerable resources attempting to defeat a valid, straightforward agreement to arbitrate between Plaintiff and the Defendants. Plaintiff's Opposition to the Defendants' Motion to Compel Arbitration, however, must fail for several reasons. First, the Plaintiff, who has admittedly demanded arbitration of the Defendants under the Arbitration Agreement at issue in this case, now seeks to defeat and invalidate the same agreement, and thus the Plaintiff is estopped from denying the validity of the very agreement he sought to enforce. Moreover, Plaintiff's substantive challenges to the Arbitration Agreement are

without merit, as the agreement is adequate and sufficient as a matter of law, and the Defendant voluntarily entered into it during his employment with InforMed.

The Plaintiff is not a person within the protected class of the ADA, and thus may not seek its protection, based upon the allegations in the Complaint.

Plaintiff's attempts to salvage an FMLA claim against Janet Camp are equally flawed. Plaintiff's Opposition fails to account for the proper test in determining whether Defendant Camp is subject to FMLA liability, and the allegations of the Complaint fail to allege sufficient facts to set forth a cause of action against an individual.

## MOTION TO COMPEL ARBITRATION

**Plaintiff is Equitably Estopped from Opposing the Motion to Compel Arbitration Based Upon Plaintiff's Prior Demand for Arbitration Under the Same Agreement**

Plaintiff acknowledges that he previously sought to enforce the very Arbitration Agreement he now seeks to invalidate.  On January 31, 2013, Plaintiff filed a Demand for Arbitration with the American Arbitration Association ("AAA") against the Defendants. Complaint, ¶83; *See,* Plaintiff's Opposition, p. 29.  Plaintiff's attempt to enforce the Arbitration Agreement by demanding arbitration is inconsistent with his position that the Arbitration Agreement is invalid and enforceable.   Plaintiff, therefore, is equitably estopped from challenging or opposing Defendant's Motion to Compel Arbitration.

Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity. *Wachovia Bank, N.A., v. Schmidt,* 445 F.3d 762, 769 (4th Cir. 2006).  Such a principle is based on a simple proposition:  it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.  *Id.* (citing *Hughes Masonry Company v. Greater Clark County Sch. Bldg. Corp.,* 659 F.2d 836, 839 (7th Cir. 1981)); *See also NLRB v.*

*Alpha Associates,* 195 Fed. Appx. 138 (4th Cir. 2006) (holding that employer who had previously recognized a union in negotiations was precluded from challenging that prior recognition in litigation); *Burlington Insurance Company v. Trygg-Hansa Insurance Co.,* 9 Fed. Appx. 196, 204 (a party may not pick and choose the contract provisions that it seeks to enforce).

As this Court has aptly noted: "It is somewhat contradictory to argue on the one hand that the underlying contracts are invalid as a matter of law ... and on the other hand to argue that the contracts are valid and were actually breached by the Defendants." *Ohio Learning Centers, LLC v. Sylvan Learning Center, Inc.,* 2012 U.S. Dist. Lexis 41718 (D. Md. 2012).

Plaintiff sought to enforce the Arbitration Agreement on the one hand, by demanding arbitration in January 2013; and now seeks to invalidate the very same agreement. As has been set forth in Defendant's initial Motion, Defendants rejected Plaintiff's attempt to demand arbitration with AAA, because the Plaintiff's unilateral action in selecting AAA, without consultation of the Defendants, was contrary to the Arbitration Agreement. Defendants did not reject arbitration; rather, they rejected AAA as the forum. AAA's fee structure is contrary to the agreement between the parties, and thus the selection of AAA did not meet the Arbitration Agreement's requirements. Nevertheless, Plaintiff's demand for arbitration with AAA clearly indicates an attempt to enforce the Arbitration Agreement, and a recognition of its validity. Upon receiving the Defendant's Motion to Compel Arbitration, the Plaintiff may not now assert that the very same Arbitration Agreement that he sought to enforce in January of this year is invalid and unenforceable. Plaintiff sought a benefit for himself in attempting to enforce the Arbitration Agreement, when he attempted to demand arbitration through a forum with a fee structure that (although violated the Agreement) was beneficial to him. The Defendants opposed

Plaintiff's attempt to unilaterally impose improper conditions and restrictions upon the arbitration.

Defendants, in this case, sought to compel arbitration in accordance with the Agreement. Plaintiff has, in response, taken the position that the same Arbitration Agreement that he previously sought to enforce, is in fact unenforceable. The Court should not countenance such a position from the Plaintiff, and therefore Plaintiff is estopped from raising any challenge to the Defendants' Motion to Compel Arbitration.

**The Arbitration Agreement is Supported by Adequate Consideration and Mutuality.**

As set forth in Defendants' Motion, the Arbitration Agreement, on its face, demonstrates that both InforMed and the Plaintiff agreed to be bound by the arbitration process. That alone is sufficient to constitute mutuality and adequate consideration. *Johnson v. Circuit City Stores, Inc.,* 148 F.2d 373, 378 (4th Cir. 1998).

Plaintiff, in his Opposition, contends that continued employment is not adequate consideration for the Arbitration Agreement under Maryland law. Plaintiff's Opposition, p. 18. Plaintiff relies on the case of *Cheek v. United Healthcare of Midatlantic, Inc.,* 835 A.2d 656 (Md. 2003), for support of the proposition. The reliance, however, is misplaced.

In the *Cheek* case, the employer (United) asserted that by providing the employee with a job, the employer had given sufficient consideration for the employee's promise to arbitrate disputes so that employer's promise to arbitrate was not illusory. *Id.* at 664. The Court rejected this contention. The Court held that: "To agree with United would place this Court in the untenable position of <u>having to go beyond the confines of the Arbitration Agreement itself</u>, and into an analysis of the validity of the larger contract, an inquiry which we cannot make." *Id.* (emphasis added). The Court also noted that United, the employer, had invited the Court "to

disregard the narrow scope of our role by <u>looking beyond the arbitration policy</u> and into the underlying Employment Agreement to determine whether consideration exists to support an agreement to arbitrate." *Id.*, at 665 (emphasis added).  Therefore, the *Cheek* Court did not find that continued employment could never serve as consideration, but rejected the contention in that case because the alleged consideration (continued employment) was not part of the agreement before the Court, and the Court refused to look beyond that particular agreement.  In other words, the *Cheek* rejected the notion that an employer could, despite the language of the Arbitration Agreement, invoke continued employment as consideration for such.

The facts of the current case are in contrast.  The Plaintiff, in the express terms of the Arbitration Policy in this case, acknowledged that his acceptance and continued employment constituted consideration.  In the Arbitration Policy, which the Plaintiff acknowledged and agreed to, it states:  "By simply accepting or continuing employment with InforMed, you automatically agree that arbitration is the exclusive remedy for all disputes arising out of or related to your employment with InforMed and you agree to waive all rights to a civil court action regarding your employment and/or the termination of your employment with InforMed." *See* Exhibit 1 to Defendants' Motion to Compel Arbitration.  Therefore, in this case, there is no request or need for the Court to go beyond the "confines" of the arbitration agreement to address the consideration issue, as there was in the *Cheek* case.  In the present case, the Court merely need only review the express language of the arbitration agreement at issue.  In this case, the Plaintiff expressly agreed that his continued employment constituted consideration.  This Court is not being asked to look beyond the arbitration policy as the *Cheek* court noted it could not do.  The consideration in this matter related to continued employment is set forth expressly within the arbitration policy, and therefore constitutes effective and adequate consideration.

Plaintiff's contention that there is a lack of mutuality is also misplaced.  Plaintiff's contention regarding lack of mutuality is based upon the notion that Defendants' promise to arbitrate is illusory.  Plaintiff's Opposition, ¶21.  Plaintiff generally contends that Defendant InforMed retained the unilateral power to alter or change its policies at any time, including the arbitration policy, and thus there is no real promise to arbitrate.  *Id.*  The basis for this contention lies in the Receipt and Acknowledgment of InforMed Employee Manual (Exhibit 2 to Defendants' Motion to Compel Arbitration).  As is demonstrated below, however, the language relied upon the Plaintiff is not applicable to the arbitration policy.

Upon receipt of the InforMed Employee Manual, the Plaintiff received and executed the Receipt and Acknowledgment of the InforMed Employee Manual. *See* Exhibit 2.  The document contains four sections, with bold headings.  The first is "**Understanding and Acknowledging Receipt of InforMed Employee Manual.**"  Under that section is the general statement relied upon by the Plaintiff in his argument which states:  "I have received and read a copy of the InforMed Employee Manual.  I understand that the policies and benefits described in it are subject to change at the sole discretion of InforMed at any time." *See* Exhibit 2.  There were three other separate and distinction sections of the receipt.  They include a section on "At Will Employment," "Arbitration," and "Confidential Information".

At the same time Plaintiff executed the Receipt described above (Exhibit 2) he also executed the Acknowledgment of and Agreement with InforMed Arbitration Policy (Exhibit 3 to Defendants' Motion).  This document, a standalone and separate document pertaining to arbitration was provided to and signed by Plaintiff on October 4, 2010.  Exhibit 3.  This acknowledgment and agreement states in relevant part:

"I agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with InforMed or the termination of that employment."

There is no indication in the specific Acknowledgment of and Agreement with InforMed Arbitration Policy that InforMed has the ability or right to alter or modify any provision pertaining to the arbitration dispute resolution process. Rather, to the contrary, the specific document pertaining to the Arbitration Agreement specifically indicates that arbitration shall be "the exclusive forum for resolving all disputes."

Plaintiff's argument, therefore, seeks to take a general statement pertaining to InforMed's Employee Handbook/Manual and apply it to the specifics of the Arbitration Agreement contained therein. However, the language relied upon by the Plaintiff is not contained even in the section pertaining to arbitration on the Receipt (Exhibit 2), and is certainly not included at all on the separate and specific document pertaining to the Acknowledgment of and Agreement with InforMed Arbitration Policy set forth as Exhibit 3.

The general provision relied upon by the Plaintiff, therefore, is inapplicable to the Arbitration Agreement. This is demonstrated by the fact that the general ability of InforMed to modify the policies in the Employee Manual is not contained in the any of the arbitration specific sections. Moreover, the fact that InforMed has a separate Agreement and Acknowledgment of Arbitration policy, and that policy does not contain any language pertaining to altering or amending the terms, demonstrates that the general ability to modify the policies of the Employee Manual does not apply to the specific Arbitration Agreement, contained in the separate writing. Exhibit 3.

Even in the event that the language in the general Receipt and Acknowledgment pertaining to the Employee Manual (Exhibit 2) could be construed as generally relating to the

arbitration policy, as the policy is contained in the Employee Manual, such language is contradicted by the separate and distinct language contained in the Agreement and Acknowledgment of the Arbitration Policy, as set forth in Exhibit 3.  The Acknowledgment of and Agreement with the InforMed Arbitration Policy expressly states that arbitration shall be the exclusive forum for resolving all disputes.  A well-established rule of contract construction states that where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it.  *Heist v. Eastern Savings Bank FSB*, 165 Md. App. 144, 151 (2005) (citing *Fed. Ins. Co. v. Allstate Ins. Co.,* 275 Md. 460, 472 (1975)).  It is without dispute that the language purportedly giving InforMed the ability to change policies at its discretion is in a general section referring to the Employee Manual.  It is also undisputed that the specific and separate document setting forth the agreement and acknowledgment pertaining to the arbitration policy, contains no such provision, and in fact expressly states that arbitration is the exclusive forum for resolving all disputes.  The terms that are specific to arbitration are contained in Exhibit 3, the Acknowledgment of and Agreement with InforMed Arbitration Policy.  To the extent they are in conflict with the general provision pertaining to InforMed's ability to alter the policies in its handbook, contained in Exhibit 2, the specific provisions pertaining to arbitration in Exhibit 3 must control, and therefore,  InforMed does not maintain the ability to alter the arbitration policy and agreement entered into by and between Plaintiff and InforMed.

That being the case, it is evident that both parties mutually agreed to arbitrate the disputes.  As set forth above, a mutual agreement to arbitrate, and to be bound, constitutes mutuality.  It is not necessary that the terms be identical or even on both sides.  Arbitration Agreements that more frequently bind the employee than the employer are valid despite the

differences in the parties' rights. *Rose v. New Day Financial, LLC,* 816 F.Supp. 2d. 245, 259 (D. Md. 2011). There is no requirement of an exact exchange of identical rights and obligations between contracting parties. *Walther v. Sovereign Bank,* 386 Md. 412, 433 (2005). The mutual agreement to be bound by the arbitration is sufficient. That exists in the present case, and thus the Arbitration Agreement is valid and enforceable.

### There Has Been an Agreement as to the Essential Terms of Arbitration

Plaintiff asserts that the Arbitration Agreement is unenforceable because it lacks essential terms. Plaintiff contends that because the Arbitration Agreement does not contain every conceivable term that it is somehow lacking in essential terms and is uncertain or indefinite, so as to be unenforceable. Plaintiff is correct that an agreement that is so vague and indefinite that it is impossible to collect from it the intention of the parties is void. However, an agreement will be sustained if the meaning of the parties can be ascertained, either from the express terms of the instrument or by fair implication. *Coe v. Hays,* 328 Md. 350, 359 (1992) (citing *Quillen v. Kelley,* 216 Md. 396, 407 (1958)). The law does not favor, but leans against the destruction of contracts because of uncertainty; therefore, the Courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained. *Id.*

A review of the Arbitration Agreement in this case clearly demonstrates the meaning of the parties. The meaning is clear from the express language of the policy that the parties agreed to: "(1) submit their disputes to arbitration, rather than to allow them to proceed into litigation; (2) that arbitration would be the binding and exclusive remedy of any and all such disputes; (3) that such disputes be raised within one year of the time they arose; and (4) that the parties agreed

to equally share in the costs and expense of proceeding with such an arbitration.  *See* Exhibits 1, 2, and 3 of Defendants' Motion.[1]

Other terms are referenced in the Agreement, although not set forth in complete detail. Were such matters contained in the Agreement, they would be terms of the Agreement and be binding.  However, the omission of those terms does not result in the invalidity of the Agreement.  The essential meaning is derived from the terms contained in the Agreement. Additional terms, not essentially involved in creating the Arbitration Agreement are not prerequisite to the Agreement being clear and definite.  *Quillen v. Kelley,* 216 Md. 396, 409 (1958).  There are no essential terms lacking from the Agreement, and the meaning of the parties can be fairly ascertained.  Given the law's desire against the destruction of contracts because of uncertainty, the Court can clearly ascertain the reasonable intention of the parties from the Arbitration Agreement, and thus it is valid.

**The Arbitration Agreement is not a Contract of Adhesion, and is not Procedurally Unconscionable.**

Plaintiff contends, without support, that the Arbitration Agreement is a contract of adhesion.  Plaintiff further contends that the Agreement is procedurally unconscionable.[2] Plaintiff alleges that he "was a low entry level call center employee with no meaningful bargaining power."  Plaintiff's Opposition, p. 25.  Plaintiff, however, provides no factual support for this conclusory allegation that he had no bargaining power.  There is no indication of any attempt to negotiate any of the terms of his employment.  There is no indication or allegation that InforMed ever rebuffed any attempt to negotiate any terms of his employment.

---

[1]   The express language of the Agreements expressly indicates that the arbitration agreed upon by the parties is pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq*.  The Agreement further identifies a timetable and process to commence the selection of an arbitrator and the scheduling of a hearing.  Exhibit 1.

[2]   Plaintiff's Opposition makes several references to an alleged offer letter sent to Plaintiff prior to his commencing work.  Regardless of those events, they do not have an impact on the procedural unconscionability of the Arbitration Agreement that Plaintiff alleges he executed subsequently, upon commencing his work for InforMed.

Plaintiff suggests erroneously that the arbitration provisions were somehow concealed from him in some manner.  Plaintiff, in the Opposition, asserts that "the arbitration provisions were not a stand-alone conspicuous document, but rather, were buried on Page 13 and 15 of the Employee Manual."  Plaintiff's Opposition, p. 25.  A review of the exhibits attached to the Defendants' Motion demonstrates this statement to be patently false.  While the Defendants' Employee Manual does contain the arbitration policy at pages 13 and 15, it cannot be stated in good faith that such provisions were "buried".  Specifically, separate and apart from the Employee Manual, the Plaintiff received and executed a Receipt and Acknowledgment pertaining to his review of the Employee Manual.  In that Receipt (Exhibit 2) there is an express section pertaining to "Arbitration."  It is hardly accurate to depict InforMed as "burying" the arbitration provisions in the Employee Manual, when it restates and references them on a single separate receipt indicating an acknowledgment of the Arbitration Policy. *See* Exhibit 2.

As if that were not enough, InforMed also provided to, and Plaintiff executed, a separate Agreement and Acknowledgment of InforMed's Arbitration Policy.  Exhibit 3.  This document, a "stand alone conspicuous document" expressly speaks to, addresses, and identifies the Arbitration Agreement.  For the Plaintiff to assert that the arbitration provisions were concealed or "buried," is specious.

It is this type of distortion of the facts, however, that is necessary for the Plaintiff to engage in an attempt to cast the Arbitration Agreement as one of adhesion.  Such maneuvers were, furthermore, evident by unsupported allegations pertaining to Plaintiff's ability to negotiate or walk away from the arbitration agreements.  Plaintiff asserts in his Opposition that "important here is that Mr. Caire had no choice but to sign the acknowledgments."  There is, however, no support for this bald, conclusory allegation.  There is nothing set forth to indicate

why Plaintiff had "no choice" but to sign.  Mr. Caire, at the time his employment commenced, was provided several written documents setting forth and identifying the Arbitration Policy.  The fact that, despite receiving all of these, he went ahead and executed them is not an indication that he had no choice to do so, but rather, quite the contrary, is an indication that, fully aware of the terms of the policy and Agreement, he knowingly and willfully proceeded.

**The Arbitration Agreement is Not Substantively Unconscionable.**

The Arbitration Agreement contains a provision requiring that a dispute be raised within one year from the date of termination.  *See,* Exhibit 1.  The shortening of the limitations period to one year is reasonable.  The Fourth Circuit has held that the limitations period may be shortened, and such periods have been approved as short as 60 or 180 days, far shorter than the one-year provision in the Agreement in this case.  *In Re Cotton Yarn Antitrust Litigation,* 505 F.3d 274 (4th Cir. 2007); *Oumar Dieng v. College Park Hyundai,* 2009 U.S. Dist. Ct. Lexis 58785 (D. Md. 2009).  Therefore, Plaintiff's contention that the one-year limitations provision in the Arbitration Agreement is substantively unconscionable is contrary to the law.[3]

Plaintiff contends that the Arbitration Agreement is substantively unconscionable because InforMed alleges a unilateral right to refuse an arbitral forum, and that the Agreement vests InforMed with "almost unfettered control over the entire arbitration process."  This assertion is without support.  Plaintiff's characterization of InforMed's refusal to engage in the AAA arbitration as demonstrating control over the arbitration process is astounding.  It is rather ironic, in that it was the Plaintiff who, without consultation with InforMed, attempted to force the

---

[3]  Plaintiff recites various facts pertaining to communications between Plaintiff and Defendant Janet Camp **after** his termination pertaining to Notice and Appeals provisions.  The dialogue between Plaintiff and Ms. Camp is of no relevance as to whether or not the Arbitration Agreement is substantively unconscionable, as that is measured by the Agreement itself.  The actions of Ms. Camp, after Plaintiff's termination, certainly has no effect on whether or not the Agreement, when entered into, and the terms thereof, is substantively unconscionable.  In short, the references to Ms. Camp's understanding of the terms of the Arbitration Agreement are simply a red herring.

matter into arbitration with AAA.  Despite the fact that there was no agreement with regard to proceeding with AAA, and AAA's fee structure is contrary to the agreement between the parties, Plaintiff nevertheless attempted to force InforMed into arbitrating in a forum to which it never agreed.  It is therefore amazing that Plaintiff characterizes InforMed's refusal to be held hostage by the Plaintiff's attempt to do so as an indication that InforMed has an inappropriate level of control over the arbitration process.  Rather, as the facts make clear, it was the Plaintiff who sought to exert complete control over the arbitration process, by attempting to force this matter into arbitration with AAA, thereby subjecting the Defendants to the strictures of AAA without any consultation of any of the other parties.  Plaintiff conveniently ignores his own complete and total unilateral action in attempting to proceed with AAA, while addressing InforMed's simple refusal to be forced into an arbitration contrary to the Agreement.

Plaintiff's contentions regarding the fee allocation arrangement are equally unavailing. Plaintiff fails to address the appropriate factors in this regard.  Plaintiff states in conclusory fashion that he is of "limited means."  His assertions, however, are mutually contradictory.  On the one hand, Plaintiff indicates that the costs and fees of arbitration are unconscionable for an individual of his limited means and resources.  Opposition, p. 31.  However, only a few paragraphs later, he acknowledges that "there is no basis of any kind upon which Mr. Caire can prove the likely actual cost to be incurred in arbitration."  Opposition, p. 32.  It further states that the Plaintiff "is obviously unable to prove the likely cost of arbitration without engaging in complete speculation."  Opposition, p. 32.  It goes without saying, therefore, that if the Plaintiff does not have a basis upon which to assert what the likely costs of arbitration are, it is impossible to assert that the costs of such arbitration are unconscionable with regard to his means.  Simply

put, if he has no basis for stating how much arbitration will cost, there is no basis for him to say that he cannot afford it.

Furthermore, the absolute cost of arbitration is not the relevant inquiry. Even if his means were relevant, the proper issue is the cost of arbitrating the matter versus litigating the matter in this Court. By example, regardless of what the absolute cost of arbitration is, were that cost to be roughly the same as Plaintiff's costs in proceeding with litigation in this Court, then the arbitration costs would not be so prohibitive as to "effectively deny the employee access to the arbitral forum." *Muriithi v. Shuttle Express, Inc.,* 712 F.3d 173 (4th Cir. 2013). Therefore, when the Plaintiff makes references to costs of court reporters and arbitrators, these costs in themselves are not indicative of anything, because they must be measured against the expected costs of litigating the matter in court. By example, if the matter proceeds in Court, Plaintiff clearly will have costs relating to discovery in the form of court reporters, transcripts, etc. (unless the Plaintiff intends to engage in no discovery whatsoever). Given that discovery mechanisms are generally much more limited in arbitration, it is likely Plaintiff's costs to proceed in court would be greater. It is the Plaintiff's burden to establish how the cost of litigating the matter in this Court will be so far less than what the costs would be in arbitration, to thus justify the assertion that the fees of arbitration would prohibit him from effectively pursuing his claim. Because the Plaintiff has failed to even address these factors, it clearly cannot be said that he has established unconscionability on such a basis.

**Plaintiff's ADA Claim Fails as Plaintiff is not an Individual Within the ADA's Protected Class.**

Plaintiff's Opposition misstates both the standard under which the Complaint must be measured, and the argument presented by the Defendant InforMed as to why the standard has not been satisfied.

Plaintiff alleges in his Opposition that a complaint in an employment discrimination lawsuit need not contain specific facts establishing a *prima facie* case. Plaintiff's Opposition, pp. 35-36. Plaintiff relies on the case of *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506 (2002) for this contention. Plaintiff, however, has misstated the standard. The *Swierkiweicz* case was decided when the courts were still utilizing the standard first set forth in *Conley v. Gibson,* 355 U.S. 41 (1957), which indicated that a motion to dismiss must be denied unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations in the Complaint. The standard relied upon in *Swierkiweicz,* however, was explicitly overruled by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 562-63 (2007). As the Supreme Court noted, in the *Twombly* case, the standard set forth by the *Conley* court (and relied upon by the *Swierkiewicz* court) had "earned its retirement." *Id.* at 563. The phrase is "best forgotten as an incomplete, negative gloss on an accepted pleadings standard." *Id.*

The applicable standard, as set forth by *Twombly* requires that the Complaint be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. It is necessary to show more than the sheer possibility of success, but rather, must show that the claim has facial plausibility by pleading factual content that allows a court to draw a reasonable inference that the Defendant is liable from this conduct alleged.

It is in this regard that the Complaint is inadequate. The Complaint fails to set forth facts demonstrating that the Plaintiff is a member of the class protected by the Americans With Disabilities Act ("ADA"). It is in this vein also that the Plaintiff has misconstrued and/or mischaracterized the Defendant's argument.

Plaintiff alleges in its Opposition that Defendant InforMed does not dispute that Plaintiff is an individual with a disability within the meaning of the ADA. Plaintiff's Opposition, p. 36.

This, however, is plainly incorrect. The entire force of InforMed's argument is that the Plaintiff is not a qualified individual with a disability. In order to invoke the protections of the statute, the Plaintiff must be a member of the class that the statute seeks to protect. Under the ADA, a covered employer shall not "discriminate against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. §12112(a). Therefore, for the statute even to apply to a Plaintiff, he must plead facts sufficient to demonstrate that he is a "qualified individual with a disability." The Complaint fails to do so.

The Complaint alleges that the Plaintiff in January 2012 informed InforMed that his condition required him to take time away from work for a period of between one and one-and-a-half weeks, followed by intermittent leave. Complaint, ¶¶54-55. The medical certification provided by Plaintiff's alleged doctor indicated that Plaintiff would require an inpatient hospitalization and/or an extended period of time off work due to illness, and 14 days or more per month of leave. Complaint, ¶57.

Plaintiff's facts indicate that he was unable to perform the essential functions of the job, as he could not work regularly. The entire premise for the alleged FMLA leave was because he could not work. The ability to perform the essential functions of the job (with or without reasonable accommodation) is the hallmark of a qualified individual. Plaintiff acknowledges that he could not do so, and thus may not invoke the protections of the ADA.[4]

Plaintiff contends that the fact that an employee seeks to invoke FMLA leave to treat a "serious health condition" does not mean that the employee therefore cannot perform the essential functions of his position. Plaintiff's Opposition, p. 38. This, is of course, true. Not all

---

[4]   Defendant will also dispute that the Plaintiff possesses a condition that even qualifies under the ADA. His condition (depression), as set forth, is one of a temporary nature, and not sufficiently permanent to invoke the ADA. Nevertheless, this particular issue is fact intensive, and not the subject of a Motion to Dismiss, unlike Plaintiff's failure to allege facts demonstrating that he could perform the essential functions of the job.

"serious health conditions" would indicate that the employee could not perform the essential functions of his position.    But in this case, that is precisely what the facts demonstrate. Plaintiff's contention demonstrates the improper attempt to blend an ADA claim with an FMLA claim.  Plaintiff states that if a serious health condition prevented an employee from being able to perform the essential functions of his job, and the employer terminated the employee, that would be permissible based upon InforMed's argument.    Plaintiff's Opposition, p. 38.    Plaintiff's argument misses the point that such a termination, if true, would be a violation of the FMLA, however, in that it would be terminating the employee for invoking the statutorily protected leave.  What the Plaintiff seeks to do is to transform every FMLA claim pertaining to a serious health condition into an ADA claim.  That is inappropriate.  If an employee invokes the right to take FMLA leave, because the employee cannot perform his job due to a serious health condition, and the employer terminates the employee on that basis, then the employee may have a valid FMLA claim.    However, because the employee is unable to perform the essential functions of the position, the employee cannot be said to have an ADA claim.    Therefore, contrary to what the Plaintiff suggests, under those facts, if proven, the Plaintiff would have a viable FMLA claim.  Such considerations were the basis for the FMLA being passed in the first place.  Nevertheless, an employee who cannot perform the essential functions of his position is not entitled to relief under the ADA.  The purpose of the ADA is to provide a means by which individuals with disabilities can maintain employment.  One who cannot do so is not entitled to invoke those protections.

Plaintiff's contention that a Plaintiff's ability to perform essential functions relates to reasonable accommodations cases, is without support.  The very class of people protected by the ADA includes qualified individuals with disabilities.  This is regardless of whether there is a

reasonable accommodation case, or discriminatory termination case, such as this one. Either way, for the Plaintiff to even invoke the protections of the statute, the Plaintiff must allege facts that he is within the class of people protected by the statute. It is in that regard that the Plaintiff's claim fails.

Similarly, Plaintiff's contentions regarding InforMed's alleged hostility towards the Plaintiff, or even alleging that there are disputes over his termination are irrelevant.[5] If the Plaintiff is not within the protected class of the statute, it does not matter how hostile the employer was toward him, or what the reason or reasons for termination were. If the Plaintiff is not within the protected class, he simply may not invoke the protections of the statute. Because Plaintiff has alleged on his own accord that he was unable to perform the essential functions of the position, his ADA claim, therefore, necessarily fails.

**Plaintiff's Opposition Fails to Address the Correct Standard for Individual Liability Under the FMLA.**

Plaintiff alleges in the Opposition that the Defendant Camp's Motion is premised on a contention that Plaintiff failed to allege that Camp does not exercise supervising authority over the Plaintiff. Plaintiff's Opposition, p. 43. Plaintiff contends that the proper inquiry is "whether the individual acts in the interest of an employer with respect to the employer." Plaintiff's Opposition, p. 43. The Plaintiff then cites a Federal regulation affirming the notion that the definition of "employer" includes a person acting in the interest of an employer in relation to an employee.

---

[5] Although not binding on this Court, it is noteworthy that the Maryland Commission on Civil Rights, on June 21, 2013, after processing and investigating Plaintiff's Charge of Discrimination, determined that there was no probable cause of discrimination. The commission found that "there was no evidence or testimony presented during the course of the investigation that corroborated Complainant's allegations that he was discriminated against," and that "all actions taken by the Respondent were applied in an equitable manner and in accordance with Respondent's policies and procedures."

The problem with Plaintiff's argument is that he does not address how the Courts have defined what it means to be "acting in the interest of an employer," wherein the factors relied upon by Camp in her Motion are applied.  Therefore, Defendant Camp agrees that the ultimate question is whether or not the Complaint has asserted facts indicating that Defendant Janet Camp was "acting in the interest of an employer in relation to" the Plaintiff.  The crux of the issue, however, is what constitutes acting in such an interest.

Contrary to Plaintiff's assertions, the Courts have established that:

"to identify whether an employee sufficiently acts, directly or indirectly, in the interests of an employer, individuals may be subject to FMLA liability when they exercise supervisory authority over the complaining authority and were responsible in whole or in part for the alleged violation while acting in the employer's interest."

*Haybarger v. Lawrence County Adult Probation and Parole*, 667 F.3d 408, 417 (3rd. Cir. 2012). Therefore, as the *Haybarger* case makes clear, the exercise of supervisory authority over the complaining authority is in fact relevant to the inquiry of whether a defendant is acting in the interest of an employer, for purposes of the FMLA.

Moreover, the courts employ the "economic reality" of the employment situation in determining whether an employee is acting in the interest of an employer  *Haybarger,* at 417. The factors of the "economic reality" test include whether the individual Defendant:  (1) had the power to hire and fire the employee; (2) supervised and controlled the employee's work schedule or conditions of employment; (3) determined rate and method of payment, and (4) maintained employment records. *Haybarger,* at 418.

The Plaintiff's argument is devoid of any application of these factors.  Of course, this is because they militate against Plaintiff's position, and are inconsistent with the facts set forth in the Complaint.  This is evident from a review of the facts highlighted by Plaintiff's Opposition.

Plaintiff contends that he has alleged sufficient facts to demonstrate an individual FMLA claim against Ms. Camp on the basis of the following:

- Ms. Camp was InforMed's Human Resources Director.

- Plaintiff had a history of reporting his medical issues to Ms. Camp, who coordinated FMLA leave.

- Defendant Camp began treating Plaintiff differently when his medical conditions worsened.

- Ms. Camp signed the termination letter provided to Plaintiff.

Plaintiff's Opposition, p. 44.

None of these facts relate to or support any of the factors of the economic reality test. They do not relate to supervision, coordination or management of conditions or schedules, affecting or having any influence over rate of pay, or the like. Plaintiff has failed to address the proper standard under which the allegations against Ms. Camp must be measured. Under the economic reality factors, and the *Haybarger* reference to supervisory authority as a means of determining whether an employee is acting in the interests of the employer, the Complaint's allegations fail. Therefore, the FMLA claim against Ms. Camp must also fail.[6]

## CONCLUSION

For all the reasons stated herein, Defendants request that their Motion to Compel Arbitration be granted, and the matter dismissed, or in the alternative, that Counts III and IV

---

[6] The Plaintiff's Opposition facts undermines his position. In the Opposition, the Plaintiff indicates that he should be "entitled to the well-founded inference" that Defendant Camp had the authority to terminate him. On its face, this is an unavailing measure. If the Plaintiff contends that Ms. Camp had the power to terminate him, that is a fact that could, and in fact should, have been alleged (were it true) in the Complaint. There is no reason why, based upon other allegations, the Plaintiff should require or be entitled to an inference of a clear and direct fact which, if alleged, is crucial to the ability to sustain the present claim. Either Plaintiff alleges that Ms. Camp had such authority, or he does not. Based upon the lack of any such allegation in the Complaint, and the tacit acknowledgment in the Opposition, as no such inference would be necessary had it been expressly pled, Plaintiff has failed to plead such. For these reasons, Plaintiff's FMLA claim against Defendant Janet Camp necessarily fails, as it does not meet the necessary pleadings standards, and fails to set forth sufficient facts to base a cause of action against an individual.

pertaining to the FMLA claim against Defendant Camp, and the ADA claim against Defendant InforMed be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

_/s/ John S. Vander Woude_
John S. Vander Woude (4882)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474 (phone)
(410) 752-0611 (fax)
E-mail: vanderwoude@ewmd.com
*Attorneys for Defendant Janet Camp*

_/s/Eric M. Rigatuso_
Eric M. Rigatuso (27605)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378
(410) 752-7474
(410) 752-0611 (fax)
E-mail: rigatuso@ewmd.com
*Attorneys for Defendant Janet Camp*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of July, 2013, a copy of Defendant's Reply To Plaintiff's Opposition To the Motions To Compel Arbitration, or in the Alternative, Partial Motions To Dismiss to was sent via electronic service to:

Ruth Anne Azeredo, Esquire
Ruth Anne Azeredo, LLC
Suite 300
1997 Annapolis Exchange Parkway
Annapolis, MD   21401
*Attorney for Plaintiff*

_/s/ John S. Vander Woude_
John S. Vander Woude